Commonwealth ex rel. Cummings et al. *v.* Nearhoof et ux., Appellants.

Argued May 9, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*J. Wray Connolly,* with him *Joseph A. Landolfi,* for appellants.

*Frank B. Warfel,* for appellee.

OPINION BY KELLER, P. J., October 4, 1940:

This is an appeal by the relators from an order entered in a habeas corpus proceeding, involving the custody of a minor child, then seven years old. The relators, Mr. and Mrs. Cummings, are the parents of the child; the respondents, Mr. and Mrs. Nearhoof, are the persons with whom the child was left, when she was a baby ten weeks old, and the parents, because of the depression, were obliged to break up their home, and the mother became the sole wage-earner, working in New York City. At the time, all the parties lived in Altoona. Relators now have their home in Pittsburgh, where they and their older daughter, (Rose May), twelve years old, live, and are desirous of having their younger daughter, Jacqueline, with them.

Jacqueline was born July 31, 1932. Her father just before, or shortly after, her birth lost his job and his family had to live with his parents, who were unable to provide for them all. The mother secured a job which required her to live in New York. She applied to the Children's Aid Society to place Jacqueline in a home, and Mrs. Nearhoof's was selected by it and the child was placed with her, the Children's Aid Society paying her $5 a week and the mother reimbursing the Society. The next year the Children's Aid Society dropped out of the picture and Mrs. Cummings arranged with Mrs. Nearhoof to keep the child for $3 a week. While this amount was disputed, the court below so found. There was no abandonment of the child. Mrs. Nearhoof admitted that she knew that some day she would have to surrender the child. "That was the condition" (p. 29a).

Mrs. Cummings paid the Children's Aid Society in full for the care of the child, while it was looking after her; but did not make all the payments to Mrs. Nearhoof thereafter, as they fell due. She admitted owing $520.

Judge MARION D. PATTERSON—now a Justice of the Supreme Court—heard the case and on December 30, 1939, awarded the child to its parents, saying: "The proceeding must be determined on what is best for Jacqueline. All things being equal, the natural parents are entitled to the custody of the children born to them, and each of these two girls has the right to enjoy the companionship of one another. If possible, they should grow up in one home with parents to guide and care for them, and there is no reason why such an arrangement should not be possible for these two girls. The respondents have been very good to the child left in their custody temporarily and they will no doubt be disappointed and grieved to part with her. However, under all the facts and circumstances we are convinced that this child of tender years should have the care of the parents and the companionship of the sister, and the advantage of the religion of the parents." He then went on to state: "The evidence shows that there was an agreement for the petitioners to pay the respondents the sum of $3 per [week] for the maintenance and care of the said Jacqueline, it being agreed that the total amount paid and owing shall be $600. The sum of $106.50 has been paid, and it is agreed that of the balance, $300 be paid in cash forthwith and a note for $193.50 be given for the balance." And concluded: "Upon the terms of this agreement being complied with, in accordance with the decree of this Court, it is ordered, adjudged and decreed that the custody of Jacqueline Cummings be delivered by the respondents to the petitioners forthwith."

We do not understand that the learned judge intended to make the return of the child to its parents conditional

on the payment of the amount due by the relators to the respondents for its care; for children cannot be kept in pawn or pledge for the money due for their keeping; nor can a custodian of a child have a *lien* upon it, as it might have for a chattel. Furthermore a writ of habeas corpus is not the proper proceeding to pass upon and determine the amount due for such care and keeping. We are satisfied that the learned judge only referred to the matter because of the *agreement* between the parties relating to it, and did not mean to embody it in the order as a condition precedent.

After his elevation to the Supreme Court, his successor, Judge GEORGE G. PATTERSON, on March 28, 1940, entered a supplementary or amended order attempting to correct the amount due the respondents for the keep and maintenance of the child, and fixing it at $1000, and adjudging: "...... the sum or amount due for the keep and maintenance of the said child shall be One Thousand ($1,000) Dollars, and shall be paid in the following manner: Seven Hundred ($700) Dollars in cash, and the balance of Three Hundred ($300) Dollars to be secured by good security before custody and possession of the child shall be delivered to the petitioners. It is further ordered, adjudged and decreed that the custody of the child, Jacqueline Cummings, shall be retained by the said John Nearhoof and Margaret Nearhoof, defendants, until the above agreement is strictly complied with." The relators appealed.

We are of opinion that the learned court below in its amended order of March 28, 1940, misunderstood the order of December 30, 1939, entered by Judge MARION D. PATTERSON, and overlooked the legal principles just above stated; and that the order must be reversed.

In view of the fact that over a year has elapsed since the hearing upon the writ was had and the situation of the parties may have changed in the meantime, and that the best interest of the child is the predominant factor

to be considered, we shall not order the child to be delivered into the custody of the relators until the court below, after a hearing, is satisfied that there has been no unfavorable change in the situation of the relators sufficient to make it undesirable and not for the best interest of the child to award her custody to them. The determination of the money due the respondents by the relators and the time and manner of payment of the same is not a matter for the court below or this court in this proceeding; but the relators should scrupulously fulfill their obligation to the limit of their ability.

Order reversed, with a procedendo.