## Commonwealth ex rel. Trimboli v. Trimboli

*Richard S. Packel*, for relator.

*Peter A. DeLiberty*, for defendant.

DIGGINS, P. J., May 24, 1972.—This is a habeas corpus proceeding for custody of a minor child, Dominic, aged four years. These contending parents married very young and after five years of marriage, still young, and a long period of marital discord, they separated September 20, 1971. The relator wife went to the abode of her mother, leaving her two children, Dominic, aged four years, and Michael, aged two years, in the care of her husband who took them to his parents. Sometime later, the mother went to the home of her mother-in-law and took the younger child and later filed a petition for writ of habeas corpus seeking to obtain custody of the older boy.

Three separate hearings were held before this court for a total of 256 pages of testimony and these hearings covered a period from November 30, 1971, until January 17, 1972.

The evidence discloses that the basic difficulty arose

and is still arising from the fact that these parents were much too immature for marriage and parenthood. The character of the individual parents, as delineated in the evidence, is interesting. The mother, in order to have the taste of life that she was too young to have for very long before the marriage, developed a fondness for rock music and bars and the type of friends with like interests, and at the same time displayed unusual irresponsibility in meeting her basic duties as a wife and mother, shamefully neglecting her household chores, the welfare of the children, and the handling of the money, and spent entirely too much time out of the home.

The father, on the other hand, by the time the children arrived, had settled into a very domestic routine. Although he was a slow learner at school, he holds down a good job as the manager of the dairy department of a Pantry Pride supermarket with a take-home pay of between $113 and $120 per week. All in all, he strikes this court as a young man of limited ability but unusual determination and very proud of the fact that he has such a job and does well with it, and exceptionally responsive to his duty as a father with deep and sincere concern for his children.

On the other hand, the mother has none of these qualities and the record indicates that her mother leaves a great deal to be desired and perhaps neglected her daughter's proper training. The wife's mother drinks too much and it is with her that the younger child is now left. The father is sincerely religiously inclined; the mother disdains this concept. The wife's sister has displayed much the same history of irresponsibility. The wife's mother provides beer for these two young children and she demonstrated a less than responsible attitude in the court. The mother so much neglected her duties that the children often went un-

fed and unclean. One developed serious diaper rash and she would at times be completely out of milk and would substitute sugar and water, insisting it was just as good. At other times the father found the children being fed curdled milk as thick as cottage cheese with a rancid smell. The father did the cleaning. Since no meals were prepared, he would frequently have to go out and get hoagies, hot dogs or hamburgers at a stand to feed the family. This mother would stay out to the early hours of the morning and then remain in bed leaving the children unattended until noontime and later. The house was disordered and filthy, pots, pans, dishes and glasses were unwashed for days and longer at a time.

Although this father wants both these children, we are concerned at this time only with the writ having to do with the older child, Dominic, now with the father and living with him in his mother's home. He is desperately worried about the environment involving the younger child left with the wife's mother while the wife works and this is not without some good reason which this record amply discloses.

On the other hand, conditions in the home of the respondent's mother where Dominic now is are very good indeed. This is a stable, well-organized, well-run home. This court had an independent investigation made of this whole situation and the reports indicate this as well as does the record, and both parties were fully cognizant of this investigation and this report and its admission in evidence.

This court allowed this mother to appear in this court in forma pauperis and she is represented by the Delaware County Legal Assistance Association, Inc., without charge. Undoubtedly, there is in this effort to get the child a purpose to make her economic situation more stable.

Always in these cases the last thing this court wants to do is to take a child of tender years from the custody of the mother and relegate her to visiting rights. In this case, however, without directly finding as a fact the total unfitness of the relator mother and the very questionable environment in her mother's house where the younger child now is, we have no trouble whatever in determining that the welfare of Dominic is best served by awarding his custody to his father where he will be raised in the kind of an atmosphere that a child needs and should have.

This, of course, is not a new principle and there are many cases which recognize the principle of the mother's rights *in the absence of compelling reasons to the contrary* and yet have sustained award of custody in the father: Commonwealth ex rel. Williams v. Price, 167 Pa. Superior Ct. 57, 74 A. 2d 668; Commonwealth ex rel. Bordlemay v. Bordlemay, 201 Pa. Superior Ct. 435; Commonwealth ex rel. Doberstein v. Doberstein, 201 Pa. Superior Ct. 102; Commonwealth ex rel. McLeod v. Seiple, 193 Pa. Superior Ct. 131.

In the case of Commonwealth ex rel. Sheftic v. Sheftic, 178 Pa. Superior Ct. 649, with President Judge Ervin speaking for the court, it was said, at page 654:

"The usual rule of law to the effect that it is preferable that the custody of a child of tender years be given to the mother is not applicable in this case because when this child most needed the mother's care it was not provided. At that time the mother was more interested in seeking her own pleasure."

Since June 22, 1971, the trial courts have had the enlightening benefit of an opinion by the Superior Court, Cercone, J., in Janflone v. Janflone, 219 Pa. Superior Ct. 194, where the circumstances were much the same as here. The court in that opinion, recogniz-

ing the problems that have arisen from time to time because of the various concepts as referred to by counsel on both sides and by the court herein, reviewed the whole spectrum of custody cases and laid emphasis on that concept which has always guided this particular court in custody cases, and that is to state "the paramount consideration in child custody cases is the welfare of the child, and all other considerations are subordinate," and went on to state that in determining the custody of a child as between its mother and its father, merely because the court finds the mother fit does not require a determination of custody in her favor, and the weight to be given a child's preference for one or the other of his parents is for the determination of the court below. Janflone, supra, supplies the authority for the reasoning of the trial judge and the philosophies applied, and the court therein concluded by saying, at page 197:

" 'We have carefully reviewed the facts in this record and are satisfied that the decision of the court below was based on the sober judgment that the best interests of these children were served by remaining with their father; and that in deciding this, the established custody guides of fitness of the parties, preference of the minors, the children of tender years policy and the policy of keeping the family together, were all carefully weighed and balanced against the paramount question of the welfare of the children,' " and confirmed the award of custody to the father.

The occasions when this court over the years has awarded custody of children to the father as against the mother have been few and far between, but there comes a time when the welfare of the child requires the order as entered in this case, and we think the facts, the philosophy and the logic are on all fours with Janflone, supra, a carefully considered, well docu-

mented opinion, which provides the trial court with much needed guidelines.

We, therefore, make the following

ORDER

And now, to wit, May 24, 1972, the minor child, Dominic Trimboli, is remanded to the custody of his father, Dominic Trimboli, and the mother, Theresa Trimboli, is granted visitation rights upon such terms and conditions as may be agreed upon by the parties, but failing to agree, the visitation shall be as follows:

The mother, Theresa Trimboli, is to have the child every other weekend from Saturday morning at 9 a.m. until Sunday evening at 7 p.m. and the mother may also have the child, Dominic Trimboli, on alternate holidays as follows: Memorial Day, the mother; July 4th, the father; Labor Day, the mother; Thanksgiving Day, the father, Christmas to be divided, the father to have the child until noon on Christmas 1972 and the mother from noon until 8 p.m.; the mother to have the child on New Year's Day; the father to have the child on Easter 1973 until noon, and the mother to have the child from noon until 8 p.m. In ensuing years following Easter 1973, the holidays shall be reversed and so on annually.